ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| MARIBEL MERCADO BELARDO<br>RECURRIDA<br><br>V.<br><br>TRIBUNAL GENERAL DE JUSTICIA<br>PATRONO<br><br>V.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br>RECURRENTE | KLRA202400490 | *Revisión Administrativa* procedente de la Comisión Industrial de Puerto Rico<br><br>Núm. CI 24-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-03<br>Núm. CFSE 24-15-23798-0<br><br><br>Sobre: Tratamiento en descanso |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de octubre de 2024.

Comparece ante nos, la Corporación del Fondo del Seguro del Estado, (CFSE o recurrente) y solicita la revocación de una *Resolución,* notificada el 6 de agosto de 2024, por la Comisión Industrial de Puerto Rico (Comisión).[1]

Por los fundamentos que exponemos a continuación, desestimamos el dictamen recurrido por falta de jurisdicción. Veamos.

**I.**

La presente causa versa sobre la lesión que sufrió la Sra. Maribel Mercado Belardo (Sra. Mercado Belardo), el 16 de enero de 2024, al levantar una caja con expedientes en su lugar de trabajo, en la Unidad Social de Familia adscrita al Tribunal General de Justicia, Región Judicial de Carolina. Surge del Informe Patronal

---

[1] Apéndice, págs. 9-10.

Número Identificador

SEN2024_____

que, por dolor en la espalda y en el área lumbar la Sra. Mercado Belardo experimentó dificultad al andar y dolencias, por lo que, procuró tratamiento médico y remedios, conforme a la Ley del Sistema de Compensaciones por Accidentes del Trabajo (Ley Núm. 45 del 18 de abril de 1935, según enmendada). A esos efectos, el 27 de febrero de 2024, el administrador de la CFSE emitió la *Decisión del Administrador sobre Tratamiento Médico* en la cual dispuso lo siguiente:

> El lesionado(a) fue examinado por primera vez el día, 27 de febrero de 2024, y luego de esta evaluación se determina que continuará recibiendo tratamiento médico en:
>
> Descanso hasta el día: 4 de marzo de 2024 y se comenzará tratamiento médico en CT (mientras trabaja) el día: 5 de marzo de 2024 por la(s) condición(es) S23.3XXA: Sprain of ligaments of thoracic spine, initial encounter, Orgánica, Primaria, Relacionado.[2]

Por estar en desacuerdo con la referida determinación, el 14 de marzo de 2024, la Sra. Mercado Belardo sometió un *Escrito de Apelación* ante la Comisión, mediante el cual, solicitó una vista pública sobre tratamiento en descanso.[3] Celebrada la vista el 12 de abril de 2024, la Comisión emitió una escueta *Resolución* (notificada el 9 de mayo de 2024) la cual, por su brevedad, reproducimos a continuación:

> En este caso se celebró vista pública el 12 de abril de 2024. Compareció la parte apelante representada por el Lic. Carlos Rodríguez García en sustitución del Lic. Pedro M. Ortiz Ubiñas. El Administrador de la Corporación del Fondo del Seguro del Estado estuvo representado por la Lic. Ana L. Dávila Pérez con su perito médico el Dr. Walter Ramos Ramos. Estuvo presente, además, nuestro asesor médico, el Dr. José O. Hernández Crespo.
>
> El licenciado Rodríguez García informó que la causal en este caso era sobre tratamiento en descanso.
>
> Ambas representaciones legales no interrogaron a la parte apelante. Estuvieron de acuerdo en escuchar el informe médico.
>
> El doctor Hernández Crespo declaró que en este caso se apeló un CT (mientras trabaja) a partir del 5 de marzo por esguince dorsal. Es trabajadora social y en estos momentos no está trabajando por enfermedad. Recomienda revocar el CT (mientras trabaja) por tratamiento rehabilitador. Tiene cita para un electromiograma con NCV para el 15 de abril de 2024, que sería el lunes, y próximamente le estarían realizando un MRI.

---

[2] Apéndice, pág. 2.
[3] Apéndice, pág. 3.

Las representaciones legales no hicieron preguntas para el doctor Hernández Crespo.

El doctor Ramos Ramos declaró que estaba de acuerdo. La lesionada recibió terapia física.

**A pregunta[s] del Comisionado, las partes renunciaron a la formulación de las determinaciones de hechos**.

Sin nada más que añadir, el caso quedó sometido.

En virtud de lo anteriormente expuesto la Comisión Industrial resuelve:

Revocar la decisión del Administrador de la Corporación del Fondo del Seguro del Estado notificada el 27 de febrero de 2024. En su consecuencia, se determina que la parte apelante tiene derecho al pago de dietas desde el 5 de marzo de 2024 hasta que sea dada de alta de tratamiento definitivamente por parte de la Corporación del Fondo del Seguro del Estado.

Ordenar al Asegurador pagar las dietas a la parte apelante, según dispone la Ley Núm. 45 de 18 de abril de 1935, según enmendada, conocida como Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 LPRA § 1 et seq.

Fijar al Lic. Pedro M. Ortiz Ubiñas, honorarios de abogado equivalente a un quince por ciento (15%) de cualquier compensación (incluyendo dietas), obtenida en este caso como resultado del presente recurso.
[...]

Inconforme, la CFSE instó una *Moción en Solicitud de Enmienda* el 29 de mayo de 2024.[4] En esta, expuso que la Comisión incidió al revocar el Tratamiento Médico Mientras Trabaja (CT) hasta el alta, lo cual implica que, la Sra. Mercado Belardo deberá recibir el tratamiento estando en descanso, con derecho al pago de dietas. Fundamentaron su inconformidad en que, del informe médico no surge que los peritos hayan contemplado que el descanso se extendiera hasta la fecha del alta. Destacó, además, que lo antes no fue parte de la prueba y tampoco fue solicitado por la Sra. Mercado Belardo. En la alternativa, arguyó que, de haber sido parte de los asuntos en controversia, la CFSE se hubiese opuesto a tal proceder.

Evaluado lo anterior, la Comisión emitió el dictamen recurrido intitulado *Resolución sobre Solicitud de Enmienda.*[5] En esta, citó la Sección 2(F) y la Sección 14 del *Reglamento sobre Derechos de Obreros y Empleados* que versan sobre el tratamiento médico inicial

---

[4] Apéndice, págs. 7-8.
[5] Apéndice, págs. 9-10.

y la compensación por incapacidad transitoria (dietas), respectivamente. Al fundamentar la denegatoria a la solicitud de enmienda detalló que, "la lesionada reporta un accidente y tiene la fecha de su primer examen médico el 27 de febrero de 2024, 'tratamiento médico inicial' en descanso hasta el 5 de marzo de 2024, cuando es puesto en CT. Este CT es el que se revoca por un testimonio unánime de los médicos en sala. Corresponde pues, que el mismo continúe los procedimientos así como dispone el Reglamento antes citado. El descanso tiene que establecerse, hasta que el obrero termine el mismo, al ser dado de alta."[6]

Insatisfecho aun, acude la CFSE ante esta Curia y señala la comisión de los siguientes errores:

> Erró la Honorable Comisión Industrial al emitir la Resolución notificada el 9 de mayo de 2024 sin incluir las conclusiones de Derecho.

> Erró la Honorable Comisión Industrial al determinar que la Aseguradora debe brindar tratamiento en descanso hasta el alta definitiva.

El 6 de septiembre de 2024, emitimos una *Resolución* en la cual concedimos un plazo a la parte recurrida para expresarse. Transcurrido mayor término sin que dicha parte dé cumplimiento, según advertido, procederemos sin el beneficio de su comparecencia. Lo antes, luego de denegar a la CFSE su solicitud de presentar la transcripción de la vista en esta etapa.

**II.**

**A. La jurisdicción y la revisión de decisiones administrativas**

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *Municipio de Aguada v. W. Construction, LLC y otro,* 2024 TSPR 69, resuelto el 21 de junio de 2024; *R&B Power, Inc. v. Junta de Subastas de la Administración de Servicios Generales de Puerto Rico,* 2024 TSPR 24, resuelto el 13 de marzo de 2024. Es por ello, que, la falta de jurisdicción incide directamente sobre el poder mismo para adjudicar una controversia.

---

[6] Apéndice, pág. 9.

*Íd*. De ese modo, la ausencia de jurisdicción trae varias consecuencias, tales como el que no sea susceptible de ser subsanada; las partes no puedan conferírsela voluntariamente a un tribunal como tampoco puede este arrogársela; conlleva la nulidad de los dictámenes emitidos; impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; obliga a los tribunales apelativos a examinar la jurisdicción del foro de donde procede el recurso, y puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 385 (2020).

En ese sentido, en reiteradas ocasiones el Tribunal Supremo ha expresado que, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, sin poseer discreción para asumirla donde no la hay. *FCPR v. ELA et al.*, 211 DPR 521 (2023). A esos efectos, las cuestiones de jurisdicción son de índole privilegiada y deben ser resueltas con preferencia. *Íd.* A causa de ello, cuando un tribunal determina que no tiene jurisdicción para intervenir en un asunto, procede la inmediata desestimación del recurso apelativo, conforme a lo ordenado por las leyes y reglamentos para el perfeccionamiento de estos recursos. *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384 (2022); *Allied Mgmt. Group v. Oriental Bank,* supra.

En lo pertinente a la presente causa, el Art. 4.006 de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, establece que el Tribunal de Apelaciones tendrá competencia para revisar las decisiones de las agencias administrativas. Véase, *ORIL v. El Farmer, Inc.,* 204 DPR 229, (2020). A tenor con lo anterior, una parte adversamente afectada por una orden o resolución final, emitida por una agencia administrativa, puede cuestionarla mediante un recurso de revisión judicial, luego de agotar los remedios provistos por el organismo correspondiente. *Simpson y otros v. Consejo de Titulares y Junta de Directores del Condominio Coral Beach y otros,* 2024 TSPR 64, resuelto el 18 de junio de 2024. En cuanto al contenido de las órdenes o resoluciones finales, la Sección 3.14 de

la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9654, requiere que, incluyan y expongan separadamente las determinaciones de hechos, si no fueron renunciadas **y las conclusiones de derecho en las cuales la agencia fundamentó su adjudicación**.

Ahora bien, el Tribunal Supremo ha resuelto que, para que los tribunales puedan revisar un dictamen administrativo es esencial que las agencias expongan claramente sus determinaciones de hechos y los fundamentos de su decisión. *Mun. de San Juan v. J.C.A.,* 152 DPR 673, 707 (2000). Sobre este asunto, nuestro más Alto Foro detalló "[l]as decisiones deben reflejar que el organismo ha considerado y resuelto los conflictos de pruebas, y sus determinaciones de hechos deben describir tanto los hechos probados como los que fueron rechazados." *Íd.,* págs. 707-708. A lo antes añadió, "la expresión de los fundamentos de una decisión no puede ser pro forma, y debe reflejar que la agencia ha cumplido con su obligación de evaluar y resolver los conflictos de prueba del caso ante su consideración." *Mun. de San Juan v. J.C.A.,* 149 DPR 263, 280 (1999), citando a *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425 (1997).

Con respecto a las conclusiones de derecho, la Sección 4.1 de la LPAU, 3 LPRA sec. 9671, dispone que estas pueden ser revisadas por el Tribunal de Apelaciones en todos sus aspectos. *Otero Rivera v. Bella Retail Group, Inc. y otros,* 2024 TSPR 70, resuelto el 24 de junio de 2024. Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.,* págs. 36-37, citando a *Torres Rivera v. Policía de PR*, 196 DPR 606, 657 (2016). Lo anterior responde a la vasta experiencia y al conocimiento especializado que

tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020).

**III.**

En el recurso de epígrafe, la CFSE impugna el dictamen de la Comisión, mediante el cual, resolvió que la recurrente deberá brindar el tratamiento rehabilitador a la Sra. Mercado Belardo en descanso (sin trabajar), hasta el alta definitiva. Lo antes, sin que la Sra. Mercado Belardo lo solicitara, sin que ello fuese parte de la prueba objeto de discusión durante la vista celebrada el 12 de abril de 2024, ni surgiera claramente del informe pericial.

Según expusimos, nuestro ordenamiento jurídico faculta a esta Curia a revisar las órdenes y resoluciones finales de las agencias administrativas, luego de que las partes agoten los remedios administrativos. Cabe reiterar que, conforme a la Sección 3.14 de la LPAU, *supra*, las órdenes o resoluciones finales deberán incluir las determinaciones de hechos y las conclusiones de derecho que sirvieron de fundamento para la Comisión adjudicar la causa. Si bien es cierto que la citada Sección 3.14 contempla que las partes puedan renunciar a la formulación de determinaciones de hechos, ello no faculta a la agencia a omitir, en su determinación administrativa final, las conclusiones de derecho, tal cual ocurrió en el presente caso. Lo antes no viabiliza que ejerzamos nuestra función revisora.

Según explica el Profesor Echevarría Vargas, citando a *Padín Medina v. Adm. Sist. Retiro,* 171 DPR 950 (2007), las determinaciones de hechos y las conclusiones de derecho no son proforma, más bien, son producto de un análisis y ponderación juiciosa del caso, cuya finalidad es explicar la decisión. J.A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño,* 5ta edición, San Juan, Puerto Rico, Ed. Situm, 2023, pág. 251.

A lo anterior se añade que, el Tribunal Supremo ha establecido que las determinaciones de hechos y las conclusiones de derecho de las agencias administrativas cumplen los siguientes

propósitos: (1) facilitar que los tribunales revisen adecuadamente el dictamen del organismo administrativo; (2) fomentar que las agencias decidan de forma cuidadosa y razonada, conforme a su autoridad y discreción; (3) ayudar a la parte afectada a comprender los fundamentos del dictamen; (4) promover la uniformidad intraagencial; y (5) evitar que los tribunales se apoderen de funciones propias de las agencias administrativas, que requieren de un conocimiento especializado. *Mun. de San Juan v. J.C.A.,* supra, págs. 281-282.

A la luz de la normativa que rige la revisión judicial en materia administrativa, nuestra función ante un dictamen de la Comisión es cotejar si la agencia cumplió con los estatutos y reglamentos que la rigen y si formuló sus determinaciones de hechos y conclusiones de forma fundamentada. A todas luces, tal función revisora se imposibilita cuando el dictamen impugnado carece de conclusiones de derecho y, por voluntad de las partes, tampoco contiene determinaciones de hechos.

Surge del expediente que, la Comisión celebró una vista pública, el 12 de abril de 2024, a la cual comparecieron todas las partes y en donde se desfiló prueba pericial del doctor Hernández Crespo. Cabe recordar que, los organismos administrativos gozan de una vasta experiencia y de un conocimiento especializado sobre los asuntos encomendados que permite que los foros revisores puedan atribuirles gran deferencia a las determinaciones administrativas emitidas. Ahora bien, conforme la normativa antes reseñada la ausencia de conclusiones de derecho, impide nuestra revisión judicial sobre lo planteado en el recurso de epígrafe. Lo antes, unido a la carencia de determinaciones de hecho o estipulaciones de las partes dificulta nuestra función revisora. Como se sabe, a esta Curia le fue delegada una función estrictamente revisora, por lo que no nos corresponde establecer hechos en sustitución de la función principal del juzgador(a) quien está en posición de dirimir credibilidad y valor probatorio. La estipulación de las partes -a los

efectos de que no se consignara los hechos probados- no debe resultar en la preterición de una correcta revisión administrativa según establece nuestro ordenamiento jurídico.

Por todo lo antes, resolvemos que carecemos de jurisdicción para entender en los méritos de la presente causa por prematuro.

**IV.**

Por los fundamentos que anteceden, desestimamos el presente recurso de revisión judicial, por falta de jurisdicción por prematuro. Devolvemos el asunto ante la Comisión para que emita una resolución fundamentada, conforme a la LPAU, *supra.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones